IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TIMMIE MARTIN, #N-51443, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | )     CASE NO. 10-cv-1035-JPG |
| | ) |
| DAVID A. REDNOUR, *et al.*, | ) |
| | ) |
|       Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Timmie Martin, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff is serving a seven year sentence for a drug offense, and another six year sentence for aggravated battery of a peace officer. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief
>     may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from
>     such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief

can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*.  At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**The Complaint**

Plaintiff's hand-written complaint, parts of which are very difficult to decipher, outlines three separate incidents where excessive force was used against Plaintiff by different correctional officers.  In addition, Plaintiff claims that a false disciplinary charge was filed on him, and describes an assault on him by his cellmate.

The first excessive force incident, which occurred on July 7, 2010, began when Defendant Morris cuffed Plaintiff's hands behind his back and removed him from his cell.  Soon after this, Plaintiff alleges that Defendant Bedinger grabbed him and "started to [illegible] me into the door

of the holding cage Hard!" (Doc. 1-1, p. 4). When Plaintiff asked where Defendant Bedinger was taking him, he answered, "Shut the fuck up nigger your black nigger ass is going to seg!" (Doc. 1-1, p. 4). As Defendant Bedinger walked Plaintiff down the hall, he pulled and twisted Plaintiff's arms up toward Plaintiff's head, inflicting pain on Plaintiff and making it difficult for him to walk. As a result of this incident, Plaintiff's shoulder was injured to the extent that the Health Care Unit issued him a year-long permit allowing him to be handcuffed in the front.

The false disciplinary charge also arose near the time of the July 7, 2010, incident. Plaintiff claims that Defendants Morris, Brown, and Bedinger falsely accused Plaintiff of some unspecified infraction, and that he served ninety days in segregation as a result (Doc. 1-1, p. 4). He was released from segregation on October 7, 2010.

On November 3, 2010, Plaintiff was placed back in West Cell House, in cell number 112. Plaintiff's new cellmate, Inmate Stamper, was a "G.D."gang member (Doc. 1-1, p. 4). Plaintiff describes himself as a retired ex-member of the Traveling Vice Lords. Stamper "started to make trouble" with Plaintiff, telling Plaintiff it was his cell, he did not want Plaintiff there, and Plaintiff had to get out (Doc. 1-1, p.4). Plaintiff immediately reported this to Defendant Morris. Defendant Morris told Plaintiff he would try to have either Plaintiff or the cellmate moved to a different cell. On a Wednesday, Defendant Morris told Plaintiff that the move should happen the next day, but that Defendant Morris would not be there on that day.

On the following day, December 2, 2010, Plaintiff was asleep in the top bunk when Inmate Stamper struck him in the face and nose, and pulled him out of the bunk onto the cell floor. Defendant Flatt was nearby and Plaintiff called to him for help. Defendant Flatt told Plaintiff he would get a supervisor, but when Inmate Stamper started walking toward Plaintiff,

Defendant Flatt opened the cell door and pulled Plaintiff out onto the gallery. No other correctional officers were yet on the scene. Defendant Flatt cuffed Plaintiff's left wrist, and Plaintiff told Defendant Flatt he could not be cuffed behind his back. Plaintiff, apparently now on his feet, pulled his front-cuff permit from his pocket and showed it to Defendant Flatt, but Defendant Flatt told Plaintiff he was going to be cuffed behind his back.

     At this point, the second episode of alleged excessive force ensued. Defendant Flatt pulled Plaintiff over backwards to the gallery floor. Plaintiff "went down hard" and Defendant Flatt put all his weight on Plaintiff, with his leg on Plaintiff's neck, attempting to cuff Plaintiff's hands behind his back (Doc. 1-1, p. 6). Plaintiff again told Defendant Flatt that he could not cuff up backward because of his shoulder injury. Next, Defendant McDaniel arrived and helped Defendant Flatt to cuff Plaintiff behind his back, both allegedly using excessive force. Plaintiff continued to protest, telling both Defendants they were hurting him and he had a front cuff permit. Defendants McDaniel and Flatt then lifted Plaintiff to his feet and took him to the front of the cell house.

     Defendant Hoffman came on the scene, and Defendant McDaniel reported to him that Plaintiff had assaulted Defendant Flatt. Officer New (who is not named as a defendant) brought Plaintiff's phone booklet to him, and removed Plaintiff's front cuff permit from it at Plaintiff's request. Defendant Hoffman read the permit, but refused to change Plaintiff's handcuffs to the front, and instead "dragged" Plaintiff to the Health Care Unit (HCU) (Doc. 1-1, p. 6). The doctor directed Defendant Hoffman to take Plaintiff to the second floor for x-rays. During the x-rays, Plaintiff's cuffs were removed.

     Plaintiff was put back in segregation. He does not state whether this was a result of

another disciplinary charge or for his own protection. On December 14, 2010, he was again assaulted by correctional officers. A correctional officer (Plaintiff does not state which one) placed handcuffs on Plaintiff's right wrist and tried to make Plaintiff cuff up behind his back. Plaintiff gave the officers his front cuff permit, but they threw the permit on the floor and ignored it. Defendant Chatman, with his foot braced on the cell door, then pulled hard on the cuffs attached to Plaintiff's right wrist, apparently while Plaintiff's hand was extended through the cell chuckhole. As a result, Plaintiff was in so much pain that he pulled his arm back inside the chuckhole, breaking the handcuffs, and causing Defendant Chatman to fall backwards onto the floor. Defendant Best was present during this entire episode, and sprayed Plaintiff in the face with some substance after the handcuffs broke.

Plaintiff claims his wrist was broken as a result of the excessive force applied by Defendant Chatman, and states he was in pain for at least four days as of the date he drafted his complaint. In addition, Plaintiff had not been seen by a doctor or nurse despite writing an emergency sick call request.

Plaintiff names a number of other Defendants in addition to those discussed above, but does not indicate how or if they were involved in any of the incidents giving rise to his claims.

Plaintiff seeks compensatory and punitive damages for his physical injuries and mental distress.

**Discussion**

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into four (4) counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The

designation of these counts does not constitute an opinion as to their merit.

**Count 1 - Excessive Force**

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 130 S. Ct. 1175 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 130 S. Ct. at 1180 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* (the question is whether force was de minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

In each of the three incidents described by Plaintiff, he alleges that force was used against him in excess of what was necessary to restrain him or direct his movements. In addition, Plaintiff states that some Defendants merely stood by and watched other officers during the events he describes, and appears to claim that these Defendants are also liable for his injuries due to their failure to intervene.

The Seventh Circuit has examined this issue as it pertains to police officers who fail to intervene when a fellow officer exceeds his authority, and they stated:

> We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge. That responsibility obviously obtains when the nonfeasor is a supervisory officer to

> whose direction misfeasor officers are committed. So, too, the same responsibility must exist as to nonsupervisory officers who are present at the scene of such summary punishment, for to hold otherwise would be to insulate nonsupervisory officers from liability for reasonably foreseeable consequences of the neglect of their duty to enforce the laws and preserve the peace.

*Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972); *see also Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (collected cases); *Archie v. City of Racine*, 826 F.2d 480, 491 (7th Cir. 1987).

Because, as shall be explained below, the Court has determined that each of the three incidents of alleged excessive force must be pursued in separate lawsuits, this count shall be further broken down into three subparts according to the date and Defendants involved.

### A. Defendants Bedinger and Morris

On July 7, 2010, Defendant Bedinger pulled and twisted Plaintiff's cuffed arms upward while marching him down the gallery. The racial expletives uttered by Defendant Bedinger as well as the injury sustained by Plaintiff indicate that the force may have been maliciously applied, and more than de minimis. Defendant Morris was present when Defendant Bedinger grabbed Plaintiff, then pulled and twisted his arms, but did not intervene. At this stage of the litigation, it cannot be determined whether the force used in this instance was de minimis or was an attempt to cause real harm. Thus, this portion of Plaintiff's claim is not subject to dismissal at this time. This claim and the other excessive force claims shall be further discussed below, in relation to severance of the claims.

### B. Defendants Flatt, McDaniel and Hoffman

On November 3, 2010, when Defendant Flatt forced Plaintiff to the floor, then along with Defendant McDaniel, held Plaintiff down and forcibly cuffed him behind his back, Plaintiff

alleges that the force used was excessive and unnecessary. Plaintiff had just been attacked by his cellmate. Plaintiff showed the Defendants his front cuff permit, and other than his verbal protests, did not appear to be resisting the Defendants' efforts to handcuff him. Likewise, when Defendant Hoffman was shown Plaintiff's medical permit to be cuffed in front, he kept Plaintiff's hands cuffed behind him, continuing to inflict pain on Plaintiff for no apparent penological reason. This portion of the claim also merits further review. However, as discussed below, it is subject to being severed from this action.

### C. Defendants Chatman and Best

The refusal to honor Plaintiff's front cuff permit similarly played into the final incident on December 14, 2010. Not only did Defendant Chatman refuse to cuff Plaintiff in the front, he pulled on the handcuff to the breaking point, possibly fracturing Plaintiff's wrist and certainly causing him pain. This occurred while Plaintiff was still inside his cell, indicating that such a level of force was not likely to have been necessary to maintain discipline. Defendant Best was present during this incident, but did not intervene when Defendant Chatman allegedly used excessive force. After the handcuffs broke, Defendant Best sprayed something in Plaintiff's face. As with the other two incidents, whether the force used here was de minimis or was an attempt to cause real harm cannot be determined at this stage. Accordingly, it is not subject to dismissal by the Court.

**Count 2 - Deliberate Indifference to Serious Medical Needs**

Plaintiff complains that after the December 14, 2010, incident (outlined in Count 1 C. above) where he claims that Defendant Chatman broke Plaintiff's wrist and Defendant Best sprayed him in the face, Plaintiff did not receive any medical care despite writing an emergency

sick call slip from his cell in segregation (Doc. 1-1, p. 7-8). Plaintiff continued to experience pain in his wrist for at least four days.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001).

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). Plaintiff's wrist injury, particularly if it turned out to be a fracture, certainly meets these criteria.

To show deliberate indifference, a prison official must "be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists" and must actually "draw the inference." *Farmer,* 511 U.S. at 837.

Although Defendants Best and Chatman are correctional officers and not medical providers, the Seventh Circuit has held that a guard who uses excessive force on a prisoner has "a duty of prompt attention to any medical need to which the beating might give rise[.]" *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996). Thus Defendant Chatman, who perpetrated the December 14, 2010, assault on Plaintiff, and Defendant Best, who failed to intervene to stop it, may be found liable for deliberate indifference to Plaintiff's need for medical care.

Given the circumstances – Defendant Chatman was using sufficient force that he was thrown to the floor when the handcuff he was pulling on broke away from Plaintiff's wrist – Defendants Chatman and Best should have been aware that Plaintiff could have sustained serious injury. In addition, Plaintiff states he made a written request for medical attention for his injuries, but believes his sick call slip was thrown away by correctional officers.

At this stage, it cannot be determined whether the actions of Defendants Best and Chatman resulted in Plaintiff being denied medical care or otherwise constituted deliberate indifference to Plaintiff's serious medical needs. Therefore, Plaintiff's claim against these Defendants should not be dismissed.

**Count 3 - False Disciplinary Charge**

In *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S.

539 (1974) (advance written notice of the charge, right to appear before the hearing panel, the right to call witnesses if prison security allows, and a written statement of the reasons for the discipline imposed). The Seventh Circuit reasoned that prisoners have a right "to be free from arbitrary actions of prison officials," *Hanrahan,* 747 F.2d at 1140, but determined that the procedural protections outlined in *Wolff* provided the appropriate protection against arbitrary actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation.

In the instant complaint, Plaintiff states that he was falsely accused of some conduct violation by Defendants Morris, Brown, and Bedinger, around the time of Defendant Bedinger's use of excessive force on July 7, 2010. However, Plaintiff gives no further information about the nature of the false charge, nor does he state whether he was given a hearing on the charge that afforded him the procedural protections described in *Wolff*. If Plaintiff was given a proper hearing, yet was found guilty of the false charge, he would not have a constitutional claim so long as the decision of the disciplinary hearing board was supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). On the other hand, if Plaintiff was not afforded the procedural protections in *Wolff*, he still may not have an actionable claim.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court of the United States rejected an argument that "any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause." *Id*. at 484. Furthermore, the Supreme Court held that while a state could create a liberty interest protected by the Due Process Clause, such interests were limited to cases where the discipline imposes an "atypical, significant deprivation" on the inmate in relation to the ordinary incidents of prison life - especially totally discretionary types of confinement such as administrative segregation and protective custody. *Id*. at 486.

In light of *Sandin*, the Seventh Circuit has observed that "the right to litigate disciplinary confinements has become vanishingly small." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.*

This Court understands *Sandin* and *Wagner* as holding that even a prisoner's arbitrary confinement in disciplinary segregation, administrative segregation, or protective custody does not implicate any liberty interest – under either the Due Process Clause or state law – so long as the confinement itself does not constitute an "atypical, significant deprivation." A particular confinement is "atypical [and] significant" only if the conditions under which the inmate is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner*, 128 F.3d at 1175. Subsequent opinions by the Seventh Circuit have explained that where the duration of confinement in segregation is relatively short, no liberty interest will be implicated. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 n.2 (7th Cir. 2009) (collecting cases).

In the case currently before the Court, nothing in the complaint or exhibits suggests that the conditions that Plaintiff had to endure because of being found guilty of the false conduct violation were substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois. Nor does the duration (three months) of Plaintiff's time in segregation trigger due process concerns. Accordingly, Plaintiff has failed to allege facts indicating that he was deprived of a liberty interest, either under the Due Process Clause or created by the State, and this claim against Defendants Morris, Brown, and Bedinger must be

dismissed with prejudice.

**Count 4 - Failure to Protect from Inmate Assault**

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer,* 511 U.S. at 834. In order for a plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.*; *Pinkston*, 440 F.3d at 889. A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer,* 86 F.3d 90, 92 (7th Cir. 1996). In other words, Defendants had to know that there was a substantial risk that the inmate who attacked Plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry,* 266 F.3d 724, 733-34 (7th Cir. 2001). However, conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston*, F.3d at 889 (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

Plaintiff did receive specific threats from his cellmate, and reported them promptly to Defendant Morris. According to Plaintiff's complaint, Defendant Morris followed up on Plaintiff's concerns and informed other staff of the need to separate Plaintiff from his cellmate. The day before the attack, Defendant Morris informed Plaintiff that one of them would be moved the following day. None of Plaintiff's allegations regarding Defendant Morris indicate that he

failed to take appropriate action in light of the reported risk, therefore, Plaintiff has not stated a claim against him for failure to protect.

The only other Defendant identified by Plaintiff in connection with the failure to protect him from his cellmate's assault is Defendant Flatt.  Although Defendant Flatt may be held liable for using excessive force against Plaintiff after removing Plaintiff from his cell (see Count 1 B. above), when Plaintiff alerted Defendant Flatt to the fact he had just been attacked by his cellmate, Defendant Flatt acted promptly to take Plaintiff out of the cell so the cellmate could not continue to harm Plaintiff.  Therefore, Plaintiff cannot claim that Defendant Flatt failed to protect him from his cellmate.

Plaintiff does not describe any other action (or failure to act) by any other Defendant that might rise to the level of deliberate indifference to the threat from Plaintiff's cellmate.  At most, some prison official might arguably have been negligent in not moving Plaintiff sooner.  However,  negligence does not amount to a constitutional violation.  Accordingly, Count 4 of Plaintiff's complaint must be dismissed with prejudice.

**Additional Defendants**

Though Plaintiff names Defendants Ashby, Baker, Cole, Cox, Davis, Delgater, Drake, Ellsworths, Foster, Grammer, Greenley, Harrsmeyer, Homcomb, Howie, Hudson, Livington, Owens, Pavon, Philips, Phoenix, Purdem, C/O Rednour, David A. Rednour, Rees, Scott, Smith, Starwheather, Stock, Taylor, Tourville, Van Hoy, Williams, Winthor, and Yukom in the caption of his complaint, he fails to list them elsewhere in his complaint, so the Court is unable to ascertain what claims, if any, Plaintiff has against these Defendants.

The reason that plaintiffs, even those proceeding *pro se*, for whom the Court is required

to liberally construe complaints, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), are required to associate specific defendants with specific claims is so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint.  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Thus, where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him.  Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual.  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

Because Plaintiff has not listed Defendants Ashby, Baker, Cole, Cox, Davis, Delgater, Drake, Ellsworths, Foster, Grammer, Greenley, Harrsmeyer, Homcomb, Howie, Hudson, Livington, Owens, Pavon, Philips, Phoenix, Purdem, C/O Rednour, David A. Rednour, Rees, Scott, Smith, Starwheather, Stock, Taylor, Tourville, Van Hoy, Williams, Winthor, and Yukom elsewhere in his complaint, he has not adequately stated claims against these individuals, or put them on notice of any claims that Plaintiff may have against them.  For this reason, Defendants Ashby, Baker, Cole, Cox, Davis, Delgater, Drake, Ellsworths, Foster, Grammer, Greenley, Harrsmeyer, Homcomb, Howie, Hudson, Livington, Owens, Pavon, Philips, Phoenix, Purdem, C/O Rednour, David A. Rednour, Rees, Scott, Smith, Starwheather, Stock, Taylor, Tourville, Van Hoy, Williams, Winthor, and Yukom will be dismissed from this action without prejudice.

**Severance of Claims**

Rule 18(a) of the Federal Rules of Civil Procedure permits Plaintiff to assert all of his claims against one defendant in one civil action. As such, Plaintiff may properly bring Count 1 C. and Count 2 in the same complaint because - in both counts - Plaintiff seeks relief against Defendants Chatman and Best. The joinder of Defendant Chatman with Defendant Best in Counts 1 C. and 2 of the complaint appears to be proper under Rule 20(a)(2) which provides that persons may be joined in one action as defendants if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20(a)(2).

Count 1 A. of the complaint, however, seeks relief only against Defendants Bedinger and Morris. Likewise, Count 1 B. of the complaint seeks relief only against Defendants Flatt, McDaniel, and Hoffman. The claims asserted in Count 1 A. and Count 1 B. do not appear to arise from the same transaction, occurrence, or series of transactions or occurrences as those in Counts 1 C. and 2. Likewise, the claims in Count 1 A. and Count 1 B. do not arise from the same transaction or occurrence.

The Seventh Circuit recently confirmed that separate, unrelated claims belong in different suits. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). On review of the complaint, the claims against Defendants Bedinger and Morris in Count 1 A. of the complaint are not sufficiently related to the claims against Defendants Flatt, McDaniel, and Hoffman in Count 1 B., nor are either of these sufficiently related to the claims against Defendants Chatman and Best in Count 1 C. and Count 2, so as to allow them to proceed together in one lawsuit.

Plaintiff is **ADVISED** that the Court is inclined to sever Count 1 B., and Count 1 C. and Count 2, into two separate actions. Count 1 A. would remain in the present action. If these claims are severed, they would be removed from this case and opened into two new cases. A new case number would be assigned to each action, and two new filing fees would be assessed (one for each new case).

Because the imposition of two additional filing fees may impose a financial burden on him, Plaintiff is **FURTHER ADVISED** that he may avoid severance (and the imposition of additional filing fees) by filing a motion to voluntarily dismiss the proposed separate claims without prejudice within 45 days of the date of this order. Again, the current action shall consist only of Count 1 A., against Defendants Bedinger and Morris (occurrence of July 7, 2010). The proposed new separate actions shall be as follows:

Count 1 B., against Defendants Flatt, McDaniel and Hoffman (November 3, 2010);

Count 1 C. and Count 2, against Defendants Chatman and Best (December 14, 2010).

Plaintiff may choose to voluntarily dismiss either one or both of the above separate claims. If Plaintiff dismisses only one claim, Count 1 A. will continue in this case, the other non-dismissed claim will be severed into a separate case and one additional filing fee assessed. If Plaintiff dismisses both of the above separate claims, then Count 1 A. will continue in this case and no severance will be necessary. If Plaintiff fails to move to voluntarily dismiss any of the claims within 45 days, then severance shall proceed, two new cases opened, and two new fees assessed.

Before filing a motion to voluntarily dismiss, Plaintiff shall consider whether he could re-file the dismissed claims without running afoul of the applicable 2-year statute of limitations.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNTS THREE** and **FOUR** fail to state a claim upon which relief may be granted, and thus are **DISMISSED** with prejudice.  **DEFENDANT BROWN** is **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that Defendants **ASHBY, BAKER, COLE, COX, DAVIS, DELGATER, DRAKE, ELLSWORTHS, FOSTER, GRAMMER, GREENLEY, HARRSMEYER, HOMCOMB, HOWIE, HUDSON, LIVINGTON, OWENS, PAVON, PHILIPS, PHOENIX, PURDEM, C/O REDNOUR, DAVID A. REDNOUR, REES, SCOTT, SMITH, STARWHEATHER, STOCK, TAYLOR, TOURVILLE, VAN HOY, WILLIAMS, WINTHOR**, and **YUKOM** are **DISMISSED** from this action without prejudice.

**IT IS FURTHER ORDERED** that, regarding the proposed severance of the separate claims outlined above, Plaintiff shall file his motion to voluntarily dismiss one or both of those claims within 45 days of the date of this order (on or before October 14, 2011).  If no motion is filed by this deadline, severance shall proceed, two new cases shall be opened, and two new filing fees assessed.

Service shall not be made on any of the remaining Defendants in Counts 1 and 2 until after the expiration of the time for Plaintiff to file his motion to voluntarily dismiss.

**IT IS SO ORDERED.**

**DATED:   August 30, 2011**

    *s/J. Phil Gilbert*
**United States District Judge**